[54 NYS3d 148]

# In the Matter of Nicholas Nicosia, an Attorney, Respondent.

Second Department, June 21, 2017

APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Forrest Strauss* of counsel), for Grievance Committee for the Ninth Judicial District.

*Nicholas Nicosia,* Vernon, NJ, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

By order filed November 4, 2016 (227 NJ 52, 147 A3d 1197 [2016]), the Supreme Court of New Jersey publicly reprimanded the respondent for violation of New Jersey Rules of Professional Conduct (hereinafter RPC) rule 1.15 (a) (failure to safeguard client funds) and (d) (failure to keep complete records of client trust account funds) and New Jersey Rules of Court rule 1:21-6 (c) (recordkeeping violations).

The New Jersey Office of Attorney Ethics (hereinafter the OAE) filed a motion dated May 5, 2016, for discipline by consent, based on a stipulation signed by the OAE and the respondent, with supporting bank records. The underlying misconduct, as revealed in the stipulation, is as follows:

### The McCaw Closing

On August 1, 2011, the respondent represented Catherine McCaw in a real estate closing. On August 2, 2011, the respondent deposited four checks, totaling $62,176.43, into his TD Bank trust account No. 6864 (hereinafter trust account No. 1) on behalf of McCaw. That same day, the disbursements issued by the respondent on behalf of the McCaw closing, totaling $62,176.43, were presented and cleared trust account No. 1. However, one of the deposited checks, in the sum of $55,575, was returned for insufficient funds. As a result, when the McCaw disbursement checks cleared trust account No. 1, other clients' funds were invaded. Admittedly, the respondent was not aware of the returned check for eight months because he did not review his monthly bank statements for trust account No. 1, did not maintain proper bookkeeping records for that account, and did not perform monthly three-way reconciliations for that account. On or about April 16, 2012, the respondent received a replacement check, which he deposited into trust account No. 1.

### The Peterson Closing

The respondent represented John Peterson and Karen Peterson in a real estate closing held on or about October 9,

2012. At the closing, the respondent issued five checks, and made two wire transfers from his TD Bank trust account No. 4318 (hereinafter trust account No. 2). On October 12, 2012, the respondent mistakenly deposited a check in the amount of $259.61 in connection with the Peterson closing into his TD Bank business account No. 4558, instead of trust account No. 2. On or about October 15, 2012, the five checks issued on behalf of the Peterson closing were presented for payment, but only one cleared the account. On October 19, 2012, TD Bank notified the OAE that the respondent's trust account No. 2 was overdrawn by $359.61. As a result, other clients' funds on deposit in trust account No. 2 were invaded. The respondent was unaware until sometime after the bank notice that TD Bank was charging wire transfer fees, and that he mistakenly deposited the Peterson check into the wrong account, because he did not review his monthly bank statements, and did not maintain proper bookkeeping records for trust account No. 2.

### The Sposato Closing

The respondent represented Laura Sposato in the purchase of real property. On October 22, 2012, the respondent deposited a check in the amount of $2,664.89 into his TD Bank trust account No. 7282 (hereinafter trust account No. 3); however, that check should have been deposited into trust account No. 2. At the closing, the respondent issued four checks totaling $2,664.89, and made a wire transfer, all from trust account No. 2. When the Sposato checks were presented to TD Bank, they were paid. As a result, other clients' funds that were on deposit in trust account No. 2 were invaded. The respondent was unaware that TD Bank was charging wire transfer fees and that he had mistakenly deposited the Sposato check into the wrong trust account because he did not review his monthly bank statements, and did not maintain proper bookkeeping records for trust account No. 2.

### The Baca Closing

On October 29, 2014, the respondent represented Alejandro Baca and Lisa Baca in the sale of property located in Paterson, New Jersey. At the closing, the respondent received a check in the amount of $14,919.20, which represented the Bacas' proceeds. This check was endorsed over to the respondent for deposit into his Highlands State Bank attorney trust account No. 7481 (hereinafter trust account No. 4). Although these

funds were to be used in connection with the purchase of real estate by Alejandro Baca, in fact, the respondent failed to deposit the check. At the closing of the Baca purchase on November 10, 2014, the respondent issued a number of checks, which cleared trust account No. 4. However, because the $14,919.20 check was never deposited into trust account No. 4, other clients' funds were invaded when checks from the closing cleared the account. The respondent did not discover his failure to deposit the check until he reviewed his November 2014 bank statement. He then immediately contacted the title agency, the check was cancelled, and the funds were directly wired into trust account No. 4 on December 15, 2014.

In addition to the aforementioned wire transfers, during October 2012, the respondent issued seven wire transfers from trust account No. 2 in connection with six other closings, and the account was charged a $25 fee for each wire transfer.

## The Respondent's Recordkeeping Violations

The OAE investigation included a review of the respondent's bank records and bookkeeping records, as well as two interviews with the respondent held on January 24, 2013, and December 12, 2013. The OAE investigation revealed that, with respect to account No. 2, the respondent: (1) failed to properly maintain required trust and business account books and records in violation of New Jersey Rules of Court rule 1:21-6 (c) and RPC rule 1.15 (d); (2) authorized Eileen Nicosia, a nonattorney, to sign checks from this trust account in violation of New Jersey Rules of Court rule 1:21-6 (c) (1) (A) and RPC rule 1.15 (d); (3) failed to designate the account and the deposit slips as an "Attorney Trust Account" in violation of New Jersey Rules of Court rule 1:21-6 (a) (2) and RPC rule 1.15 (d); and (4) made online transfers to and from the trust account without proper authorization in violation of New Jersey Rules of Court rule 1:21-6 (c) (1) (A) and RPC rule 1.15 (d).

Concerning the respondent's trust account No. 3, the OAE investigation revealed that the respondent: (1) failed to properly maintain required trust and business account books and records in violation of New Jersey Rules of Court rule 1:21-6 (c) and RPC rule 1.15 (d); and (2) held old outstanding checks in this trust account records in violation of New Jersey Rules of Court rule 1:21-6 (d) and RPC rule 1.15 (d).

Further, although the respondent was advised during the OAE investigation that he could not commingle his personal

funds in his attorney trust accounts, the respondent admitted that he continued to do so in trust account No. 4 by "erroneously" depositing earned legal fees into that account instead of his business account. He further admitted that he failed to correct the erroneous deposits. Also as to trust account No. 4, the bank statement dated October 31, 2014, revealed that the account did not have a proper account designation as a trust account. Although the respondent was also instructed to resolve any outstanding deposits older than a couple of days, the November 2014 bank reconciliation for trust account No. 4 revealed $4,009 in outstanding deposits, some dating as far back as May 31, 2013.

Additionally, the respondent's attorney trust accounts were not IOLTA trust accounts as required by New Jersey Rules of Court rule 1:28A.

Based upon the foregoing, the respondent admitted that he violated the following: (1) New Jersey Rules of Court rule 1:21-6 (a) (2), which states that all attorney trust accounts, as well as all deposit slips and checks drawn thereon, shall be prominently designated as an "Attorney Trust Account"; (2) New Jersey Rules of Court rule 1:28A, which states that every attorney who practices in New Jersey shall maintain in a financial institution in New Jersey an IOLTA non-interest-bearing trust account or accounts for all clients' funds that are not placed at interest for the benefit of the client; (3) RPC rule 1.15 (a), which provides that a lawyer shall hold property of clients and third persons separate from the lawyer's own property and may only maintain personal funds in a trust account reasonably sufficient to pay bank charges; and (4) RPC rule 1.15 (d), which states that a lawyer shall comply with the provisions of New Jersey Rules of Court rule 1:21-6.

Upon review, by letter dated July 27, 2016, the Disciplinary Review Board of the Supreme Court of New Jersey (hereinafter the DRB) granted the OAE's motion for discipline on consent. The DRB took into account that the respondent had no prior discipline in over 10 years of practice, and determined that a reprimand was the appropriate measure of discipline for his violations of RPC rule 1.15 (a) and (d) and New Jersey Rules of Court rule 1:21-6.

By order filed November 4, 2016 (227 NJ 52, 147 A3d 1197 [2016]), the Supreme Court of New Jersey publicly reprimanded the respondent.

In response to this Court's order to show cause dated January 20, 2017, the respondent submitted an affidavit in which

he states, inter alia, that he has complied with the New Jersey order of discipline in all respects, and has amended his policies of handling real estate transactions by having the title companies handle settlement and distribution of buyers' funds.

In determining the appropriate sanction, the record of the New Jersey proceedings confirms that the respondent failed to properly handle escrow funds in four real estate transactions (McCaw, Peterson, Sposato, and Baca), which resulted in the invasion of other clients' funds on deposit; engaged in commingling, and continued to do so during the OAE investigation; improperly authorized a nonattorney to sign trust account checks; and failed to adhere to bank and bookkeeping mandates. The respondent's misconduct is not confined to an isolated error, but reflects a course of conduct which involved multiple trust accounts, and spanned a period in excess of three years. We have considered the remedial measures the respondent has implemented, and the absence of a disciplinary record as factors in mitigation.

Based upon the misconduct underlying the order of the Supreme Court of New Jersey filed November 4, 2016, the respondent is suspended from the practice of law for a period of six months (see Matter of Steinberg, 143 AD3d 138 [2016]).

ENG, P.J., MASTRO, RIVERA, DILLON and CHAMBERS, JJ., concur.

Ordered that pursuant to 22 NYCRR 1240.13 (c), the respondent, Nicholas Nicosia, is suspended from the practice of law for a period of six months, commencing July 21, 2017, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than December 22, 2017. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (a), and (4) otherwise properly conducted himself; and it is further,

Ordered that the respondent, Nicholas Nicosia, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the re-

spondent, Nicholas Nicosia, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Nicholas Nicosia, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).