Matter of Savedoff (2020 NY Slip Op 04813)





Matter of Savedoff


2020 NY Slip Op 04813


Decided on August 27, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 27, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. Dianne T. Renwick,Justice Presiding,
Judith J. Gische
Barbara R. Kapnick
Ellen Gesmer
Peter H. Moulton,Justices.


M-1734

[*1]In the Matter of Laurence Savedoff, (admitted as Laurence Michael Savedoff), a suspended attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Laurence Savedoff, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, as Laurence Michael Savedoff, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on January 13, 1999.



Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Raymond Vallejo, of counsel), for petitioner.
Michael S. Ross, Esq., for respondent.



PER CURIAM.


Respondent Laurence Savedoff was admitted to the practice of law in the State of New York by the Second Judicial Department on January 13, 1999, under the name Laurence Michael Savedoff. At all times relevant to these proceedings, respondent maintained an office for the [*2]practice of law within the First Judicial Department.
In November 2019, this Court determined that respondent's federal conviction for misprision of a felony constituted a "serious crime," immediately suspended him from the practice of law, and referred the matter for a sanction hearing. The parties have now filed a joint motion for discipline by consent which should be granted.[FN1]
By joint notice of motion dated May 18, 2020, the Attorney Grievance Committee (AGC) and respondent ask this Court, pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR § 1240.8(a)(5)), to suspend him from the practice of law for a period of two years, nunc pro tunc to April 18, 2019, based upon the stipulated facts and consent of the parties.
Pursuant to 22 NYCRR 1240.8(a)(5)(i), the motion is supported by a joint affirmation which contains a statement of facts, conditional admissions, factors in aggravation and mitigation, and agreed upon discipline. Pursuant to 22 NYCRR 1240.8(a)(5)(ii), the motion is accompanied by respondent's affidavit acknowledging his admission to the stipulated facts, his consent to the agreed upon discipline, which he has freely and voluntarily given, and his full awareness of the consequences of such consent.
As relevant, on July 12, 2018, respondent pleaded guilty, in the United States District Court for the Western District of New York to misprision of a felony in violation of 18 USC § 4, a felony under the United States Code. The basis for this conviction was that, between 2008 and 2009, respondent, as settlement attorney, represented a mortgage bank, The Funding Source (TFS), in eight real estate transactions for properties located in the Bronx, New York, involving loans insured by the Federal Housing Administration (FHA). During the transactions,
respondent learned that his codefendants were engaged in a scheme to fraudulently obtain mortgages that were insured by the FHA on behalf of unqualified borrowers and he, inter alia, signed legal documents knowing that the information was false. Although he did not know the full extent of the scheme, respondent became aware he was being used to defraud financial institutions and he failed to notify authorities of his codefendants' use of fraud to obtain funds from TFS. Respondent also took affirmative steps to conceal the fraud by signing, or having his paralegal sign, documents sent to the banks.
On April 18, 2019, respondent was sentenced to four months imprisonment, followed by one year of supervised release, and he was directed to make restitution for which he is jointly and severally liable with five other codefendants. On November 6, 2019, respondent completed his period of incarceration and was released. He is scheduled to complete his supervised release on November 6, 2020.
As noted, by order of November 26, 2019, this Court deemed respondent's conviction a "serious crime" and immediately suspended him pending a sanction hearing (179 AD3d 19 [1st Dept 2019]). In January 2020, respondent filed his affidavit attesting to his compliance with the terms of his interim suspension. Since his release from prison, respondent has been doing volunteer work but he has been unable to find a paid position, presumably because of his felony conviction, which he has fully disclosed on all job applications. He continues to manage the mixed-use building in which his law office had been located, along with two small residential houses which he rents out, but none of them generate a profit.
As noted, the parties' stipulation includes respondent's conditional admissions of the acts underlying his conviction.
In 2008, respondent served as the settlement attorney in seven real estate transactions, in five of which he also represented the purchaser. The HUD-1 Settlement Statements for these transactions falsely stated that the purchasers provided funds at closing, when that was not the case, and misrepresented the amounts and/or sources of broker fees paid to respondent's codefendants. Notwithstanding this false information, respondent instructed his paralegal to sign [*3]his name to the HUD-1 documents to fraudulently certify the truth and accuracy thereof before sending them to TFS and another lender. The loans at issue were subsequently purchased by other FDIC insured banks.
In a 2009 transaction, respondent was one of three sellers and he also represented the purchaser. The HUD-1 Settlement Statement for this transaction falsely stated that the purchaser provided funds at closing when this was not the case, as well as misrepresented the amount and source of a broker fee paid to one of respondent's codefendants. Notwithstanding this false information, respondent instructed his paralegal to sign her name to the HUD-1 documents to fraudulently certify the truth and accuracy thereof before sending them to TFS, which subsequently sold the loan to Citibank.
Respondent earned fees for the seven transactions in which he served as settlement attorney (as noted, for five of which he also acted as the attorney for the purchaser). In the transaction in which he was one of the three sellers and also represented the purchaser, he received his initial investment plus a profit. Respondent has paid restitution ordered by the court (for which, as noted, he and five co-defendants are jointly and severally liable).
Based on the stipulated facts discussed above, respondent admits that he stands convicted of a "serious crime," he violated the New York Rules of Professional Conduct, and he is subject to discipline by this Court under 22 NYCRR 1240.12(c)(2).
The parties have stipulated to two aggravating factors, namely, dishonest or selfish motive and a pattern of misconduct (22 NYCRR 1240.8[b][2]; ABA Standards for Imposing Lawyer Sanctions §§ 9.21, 9.22[b], 9.22[c]).
The mitigating factors stipulated to by the parties include:
respondent's full cooperation with criminal authorities; he promptly notified this Court and the AGC of his conviction and fully cooperated with the AGC's investigation; he has accepted full responsibility for his criminal misconduct and has expressed sincere remorse and contrition for it; he is well regarded in the legal community and has an excellent reputation for honesty and integrity; he is a well respected and active member of his community as evidenced by his contributions to his twin sons' youth baseball team and coaching his daughter's basketball team, his volunteer work delivering food to the needy and elderly which has continued during the COVID-19 outbreak, and his weekly two-hour work as a call center volunteer assisting small business owners to apply for financial assistance related to the COVID-19 pandemic; he has already suffered other penalties and sanctions related to his conviction including incarceration and his interim suspension; and his criminal conduct occurred more than 10 years ago and he has lived a law abiding life ever since which shows that a recurrence of his misconduct is unlikely.
Additionally, the parties agree that under 22 NYCRR 1240.8(b)(2) and §§ 9.31 and 9.32 of the ABA Standards, timely good faith effort to make restitution or to rectify consequences of misconduct, full and free disclosure to disciplinary board or cooperative attitude toward proceedings, character or reputation, imposition of other penalties or sanctions, remorse, and remoteness of prior offenses may be considered in mitigation herein and may justify a reduction in the degree of discipline to be imposed.
The parties agree that the appropriate sanction to be imposed herein is a two-year suspension, nunc pro tunc to the date of respondent's sentencing. The parties note that the sanction for comparable misconduct has been a suspension ranging from six months to three years. The case law they cite includes Matter of McKenzie (177 AD3d 134 [1st Dept 2019]), a reciprocal discipline case in which a one-year suspension was imposed based upon a suspension of the same length imposed by New Jersey for a misdemeanor conviction in the U.S. Virgin Islands arising from the attorney's participation in a scheme to manipulate the outcome of a government administered real estate auction. In addressing the relevant precedent on the issue of sanction, this Court opined that the offense at issue was "somewhat analogous to the federal offense of misprision of felony" (177 AD3d at 139).
They also cite Matter of Bertsch (112 AD3d 158 [2d Dept 2013]; Matter of Russell (63 AD3d 71 [2d Dept 2009]; Matter of Calonge (52 AD3d 1111 [3d Dept 2008]; Matter of Fishman [*4](22 AD3d 100 [2d Dept 2005]; and Matter of Fronk (238 AD2d 82 [4th Dept 1997]). The parties argue that a two-year suspension strikes the appropriate balance between the particulars of respondent's conduct and his mitigation and is in accord with the above precedent.
In light of the foregoing, the proposed discipline of a two-year suspension, effective April 18, 2019, the date of respondent's sentencing, is an appropriate sanction for his "serious crime." While the parties do not explain why they believe that respondent's sentencing date, as opposed to the date of his interim suspension, is the appropriate start date for the agreed upon suspension, the seven-month differential between the two dates is not significant, particularly since respondent was incarcerated for four of those months.
Accordingly, the parties' joint motion for discipline by consent should be granted and respondent suspended from the practice of law in the State of New York for a period of two years, effective nunc pro tunc to April 18, 2019, and until further order of this Court.
All concur.
Order filed. [August 27, 2020]
The joint motion for discipline on consent is granted, and respondent is suspended from the practice of law in the State of New York for a period of two years, effective nunc pro tunc to April 18, 2019, and until further order of this Court.



Footnotes

Footnote 1:Under 22 NYCRR § 1240.8(a)(5)(iii), the filing of the parties' joint motion stayed the sanction hearing.